# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| 440 JERICHO TURNPIKE AUTO SALES LLC, and PATCHOGUE 112 MOTORS LLC, on behalf of themselves and all others similarly situated, | Case No.  2:25-cv-13909 |
| | **CLASS ACTION COMPLAINT** |
| | **<u>JURY TRIAL DEMANDED</u>** |
| Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY, a Delaware corporation, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................1

II.    JURISDICTION AND VENUE ..................................................3

III.   PARTIES ............................................................................4

       A.     Plaintiffs ..................................................................4

       B.     Defendant .................................................................4

IV.    FACTUAL ALLEGATIONS .....................................................4

       A.     The Crucial Role of Dealerships in Selling and Servicing
              Ford Vehicles ............................................................4

       B.     Ford Dealerships' Obligations to Perform Warranty
              Work and Recall Repairs ..............................................8

       C.     Ford's Unprofitable Push to Sell EVs ..............................9

       D.     Ford Is Violating New York Law Regarding Warranty
              Repair ....................................................................11

V.     CLASS ACTION ALLEGATIONS ...........................................12

VI.    CLAIMS ...........................................................................16

COUNT I :  VIOLATIONS OF THE FRANCHISED MOTOR
              VEHICLE DEALER ACT ("NYDA") (NY VEH & TRAF
              § 465 *et seq.*) ..........................................................16

PRAYER FOR RELIEF .................................................................17

DEMAND FOR JURY TRIAL .........................................................18

011333-11/3365774 V1

Plaintiffs 440 Jericho Turnpike Auto Sales LLC ("Jericho") and Patchogue 112 Motors LLC ("Patchogue") bring this action on behalf of themselves and on behalf of the proposed class defined below, and allege upon information and belief and the investigation of counsel, as follows:

## I.    INTRODUCTION

1.     Automotive dealerships are often at the mercy of automotive manufacturers ("OEMs") in terms of fair compensation for repairs the dealerships perform under warranty. As a result, there are state laws that regulate OEM's reimbursements to their respective dealerships. In particular, under New York law, OEMs must compensate eligible dealerships for parts related to warranty repair services at a rate that "shall not be less than the price and rate charged by the franchised motor vehicle dealer for like services to non-warranty and/or non-service contract customers."[1] As a result, after a dealer is approved for a retail markup, OEMs like Ford cannot reimburse dealership for repairs for less than what the dealerships would charge customers for non-warranty work.

2.     But that is precisely what Ford has done here, particularly with the replacement of batteries in electric vehicles ("EVs"). Batteries in EVs are generally

---

[1] N.Y. Veh. & Traf. Law § 465(1); *see also Tom Rice Buick-Pontiac v. Gen. Motors Corp.*, 551 F.3d 149, 151 (2d Cir. 2008).

the single most expensive component of an EV.[2] The price of a battery in a Ford

Mach-E, for example, can be $25,000 or more,[3] plus labor. Ford is obligated to

reimburse dealerships based on the markup of the prevailing retail price. But

instead, Ford is providing these batteries at "no cost" or "reduced cost," meaning

Ford claims it is providing the batteries for free (or nearly free). The markup that

Ford pays dealers is accordingly a small fraction of what the dealers are owed, in

clear violation of New York law.

3.      As detailed below, as a result of Ford's conduct Plaintiff Jericho was

underpaid nearly $300,000, and Plaintiff Patchogue was underpaid over $615,000.

With approximately 150 Ford dealerships in New York,[4] total damages may

exceed $67.5 million. If left unchecked, Ford's windfall will continue to grow with

the increasing popularity of EVs.

4.      Plaintiffs accordingly bring this class action, on behalf of themselves

and those similarly situated, and allege violations of New York's Franchised Motor

Vehicle Dealer Act (N.Y. Veh. & Traf. Law § 465 *et seq.*).

---

[2] https://evs-inmotion.com/inmotion-news-and-insights/understanding-the-total-cost-of-ownership-for-electric-vehicles#:~:text=At%20the%20heart%20of%20the,is%20still%20on%20the%20horizon.

[3] https://www.topspeed.com/ford-mustang-mach-e-battery-replacement-costs/.

[4] https://www.dealerrater.com/directory/new-york/Ford/#:~:text=158%20new%20york%20Ford%20Dealers.

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because at least one Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interests.

6.    This Court also has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed class consists of dozens of members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and, members of the class are dispersed across the United States with each member being a citizen of a state different from Ford, which is a Michigan corporation.

7.    This Court has personal jurisdiction over Defendant Ford, which has its principal place of business in this District, has engaged in sufficient minimum contacts with the United States, this judicial district, and this state, and it has intentionally availed itself of the laws of the United States and this state by conducting a substantial amount of business throughout the state, including through its dealerships.

8.    This judicial district is a proper venue because Ford has its principal place of business in this District, and many of the acts and transactions giving rise to this action occurred in this District.

## III.   PARTIES

### A.   Plaintiffs

9.     440 Jericho Turnpike Auto Sales LLC ("Jericho") has its principal place of business in the State of New York. It owns Ford Lincon of Smithtown, a Ford dealership located in Smithtown, New York.

10.     Plaintiff Patchogue 112 Motors LLC ("Patchogue") has its principal place of business in the State of New York.  It owns Stevens Ford, a Ford dealership located in Patchogue, New York.

### B.   Defendant

11.     Defendant Ford Motor Company ("Ford") is a publicly traded corporation organized under the laws of the State of Delaware with its principal place of business at One American Road, Dearborn, Michigan 48126. Defendant Ford Motor Company can be served with process through its agent The Corporation Company, 40600 Ann Arbor Road E. Ste. 201, Plymouth, Michigan, 48170.

## IV.   FACTUAL ALLEGATIONS

### A.   The Crucial Role of Dealerships in Selling and Servicing Ford Vehicles

12.     Customers who want to purchase Ford vehicles almost invariably go to a Ford dealership, not Ford itself. The Ford website, for example, provides customers the opportunity to explore different prices based on the vehicle packages it offers, but ultimately directs potential buyers to a Ford dealership if they express

an interest in purchasing a vehicle. When a customer selects "Get an Internet Price" for a given model, the website immediately prompts the customer to select his/her closest authorized dealership:



13.    As a result, dealers play a crucial role in generating sales, including steering customers to purchase EVs. Ford's top management agrees: Ford CEO Jim Farley in July 2025 told the *Detroit Free Press* that "it's very clear, in Ford's case, that our bet on the dealerships was the right bet. … That's all because our dealers can take an Edge customer and say, 'would you be interested in a Mach-E?' That's salesmanship that we can't do at the company. Whether it's remote

service, Triple Crown awards, training it's all done together. We do it together with our dealers. That's the secret sauce."[5]

14.     Dealerships also serve as the face of the company when customers need to have their vehicles repaired. Car owners bring in their vehicles to dealerships even if it is unclear if the vehicles are still under warranty, or even when they are definitively not under warranty, because customers build up a level of trust and connection with the dealership.

15.     Ford encourages this connection. For example, on Ford's website, it states that "Ford Certified Collision Centers are the only repair facilities recommended by Ford. They prioritize the use of Original Equipment (OE) parts engineered by Ford, ensuring precise fit and function. Technicians are trained to follow Ford repair procedures, preserving your vehicle's structural integrity and safety systems."[6] Under the header "Why Choose Original Ford Parts?," the website states "You chose your Ford vehicle for its quality, safety, and performance. After an accident, why compromise with aftermarket or salvage parts? Go with the original and restore your vehicle to its pre-collision condition.

---

[5] https://fordauthority.com/2025/07/ford-ceo-jim-farley-credits-dealers-for-q2-sales-success/.

[6] *See* https://www.ford.com/support/category/service-maintenance/collision-assistance/.

Plus, keep in mind that the use of aftermarket parts could impact warranty coverage and resale value."[7]

16.     For its EVs, Ford promotes its "8-year/100,000-mile high-voltage limited battery warranty."[8] For the battery warranty, Ford states "Ford Motor Company offers warranty coverage for components unique to hybrid and electric vehicles, including the high voltage battery, found to be defective in factory-supplied materials or workmanship. This coverage lasts for 8 years or 100,000 miles from the Warranty Start Date, whichever occurs first."[9] Ford is again encouraging customers with EVs to visit their dealerships with any issues related to their batteries.

17.     A Ford dealership's only source for "Certified Parts," including the batteries for its EVs, is Ford. This creates a power dynamic that even the U.S. Supreme Court identified as ripe for abuse: "[The] vast disparity in economic power and bargaining strength has enabled the [manufacturer] to determine arbitrarily the rules by which the two parties conduct their business affairs." *New Motor Vehicle Bd. of Cal. V. Orrin W. Fox Co.*, 439 U.S. 96, 100 n.4 (1978)

---

[7] *See Id.*

[8] https://www.ford.com/support/how-tos/electric-vehicles/electric-vehicle-maintenance/electric-vehicle-care.

[9] https://www.ford.com/support/how-tos/warranty/warranties-and-coverage/what-is-the-warranty-on-hybrid-and-electric-vehicles/.

(quoting S. Rep. No. 2073, 84th Cong., 2d Sess., 2 (1956)). As a result, "Dealers are with few exceptions completely dependent on the manufacturer for their supply of cars. When the dealer has invested to the extent required to secure a franchise, [the dealer] becomes in a real sense the economic captive of [the dealer's] manufacturer." *Id.*

## B.    Ford Dealerships' Obligations to Perform Warranty Work and Recall Repairs

18.    Every Ford vehicle comes with a warranty, which covers repairs over a standard time or distance period. Ford also periodically issues recalls on its vehicles.

19.    In both instances, Fords dealers are required to perform the warranty work and repairs, pursuant to the terms of its Dealer Sales and Service Agreement, even when the dealer did not sell the vehicle at issue. Customers obviously do not pay for repairs covered by warranty or a recall. As Ford acknowledges, "Ford Dealers are in the best position to diagnose your concern and see if the repair is covered by a warranty."[10]

20.    For any of these obligatory services, Ford dealers lose out on the opportunity to do repairs for which they would be paid cash, by the customer, including a standard markup on parts. This power disparity is why the dealer

---

[10] https://www.ford.com/support/how-tos/warranty/warranties-and-coverage/what-is-the-warranty-on-hybrid-and-electric-vehicles/.

fairness statutes are critical – otherwise Ford could set random and arbitrary compensation rates that are lower than market price and do not compensate dealers for the revenue they lose doing their obligatory repairs.

## C.   Ford's Unprofitable Push to Sell EVs

21.    Ford is the third leading manufacturer of automobiles sold in the United States.[11] Like most manufacturers, Ford is making a major push to develop and sell electronic vehicles ("EVs"). According to Ford, it is "Betting on America: Ford is investing approximately $5 billion and creating or securing nearly 4,000 jobs across [the] Louisville Assembly Plant and BlueOval Battery Park Michigan to deliver a new pickup and produce prismatic LFP batteries."[12]

22.    As Ford has announced, "Ford Motor Company is once again taking a revolutionary leap forward in engineering and manufacturing to bring a new family of affordable, high-quality electric vehicles within reach for millions around the world."[13]

---

[11] *See* https://www.coxautoinc.com/insights-hub/cox-automotive-forecast-dec-2024-u-s-auto-sales-forecast/#:~:text=Robust%20Q4%20Performance%20Drives%202024,over%204.2%25%20from%20last%20year.

[12] https://www.fromtheroad.ford.com/us/en/articles/2025/ford-affordable-electric-vehicle-platform-midsize-electric-truck.

[13] *Id.*

23.    Ford sells the best-selling electric pickup in the United Sates (the F-150 Lighting). So far this year it has sold over 240,000 electric vehicles, which Ford claims is more than General Motors and Stellantis (FCA) combined.[14]

24.    Even as Ford continues to push its EV business, it faces the challenge of offering the vehicles at a reasonable price, which turns on the price of the battery. According to Ford CEO Jim Farley, "[a]n affordable electric vehicle starts with an affordable battery… . If you are not competitive on battery cost, you are not competitive."[15] According to an August 2025 article entitled "Ford's Next Big EV Money Move: Turning Batteries into Businesses,"[16] Ford "faces slowing EV sales and upcoming policy changes. The company's EV sales are down nearly 10% through the first seven months of 2025 compared to the same period last year. With the $7,500 tax credit set to expire at the end of September, the market will get even more competitive from here."[17] Ford appears to be trying to save money on batteries by not fully reimbursing battery replacements at retail prices.

---

[14] https://insideevs.com/news/774426/ford-ev-sales-q3-2025/.

[15] https://www.fromtheroad.ford.com/us/en/articles/2024/ford-broadens-electrification-strategy-to-reach-more-customers-.

[16] *See* https://electrek.co/2025/08/19/fords-next-big-ev-money-move-selling-batteries/.

[17] *Id.*

25.     As a result of these difficulties in the EV market, "[l]ike most automakers, Ford is aggressively looking to cut costs to turn a profit on electric vehicles. After its EV business, Model e, lost $5.1 billion last year, Ford is warning that it could lose even more this year due to investments in its next-gen models. According to Farley, the first model will need to be profitable in its first year on the market. ***Selling extra batteries could be a new source of revenue for Ford as it looks to turn things around***."[18]

## D.     Ford Is Violating New York Law Regarding Warranty Repair

26.     Without explanation or justification, Ford is violating New York's dealer franchise statute by not compensating dealers based on a markup of the retail value of the parts.

27.     The baseline amount Ford owes to dealers is generally the cost of the parts plus a 40% markup, but the dealers can apply for a "retail" markup that is consistent with the markup the dealer typically applies for non-warranty repairs. The percent of retail markups varies, but generally ranges between 70%-200%.

28.     Each Plaintiff was entitled to a retail markup, but neither Plaintiff received it. For example, Jericho's dealership (Ford Lincoln of Smithtown) has replaced 15 batteries since early 2024, but for 13 of these batteries, Ford only reimbursed Jericho $600 per battery.  Based on Ford's statutory warranty parts

---

[18] *Id.* (emphasis added).

markup requirement, Jericho should have received approximately $22,600 per battery (or $293,800 total), leading to a shortfall of $286,200. Jericho replaced two other batteries for approximately $13,000, but received zero compensation from Ford. Jericho has accordingly been damaged in an amount of nearly $300,000.

29.     Patchogue's dealership (Stevens Ford) has replaced 28 batteries since early 2024, and was paid a fictitious "handling" fee of $600 per battery.  They also should have been reimbursed approximately $22,600 per battery (or $632,000), leading to damages to Stevens of approximately $615,200.

## V.    CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the class of persons and entities who were not fully reimbursed by Ford for warranty repair or replacement work. The class is defined as follows

> **<u>New York Class:</u>** All persons or entities who, from December 1, 2022 to the present, did not receive full reimbursement from Ford for warranty work performed.

31.     Excluded from the Class are Ford and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Ford has a controlling interest. In addition,

governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Class. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

32.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

33.     The Class Representatives are asserting claims that are typical of claims of their Class, and they will fairly and adequately represent and protect the interests of the Class in that they have no interests antagonistic to those of the putative Class members.

34.     The amount of damages suffered by each individual member of the Class, in light of the expense and burden of individual litigation, would make it difficult or impossible for individual Class members to redress the wrongs done to them. Plaintiffs and other members of the Class have all suffered harm and damages as a result of Ford's unlawful and wrongful conduct. Absent a class action, Ford will likely not have to compensate victims for Ford's wrongful conduct, and will continue to commit the same kinds of wrongful acts in the future.

35.     **Numerosity under Federal Rule of Civil Procedure 23(a)(1)**: The

members of the Class are so numerous that individual joinder of all its members is

impracticable. Due to the nature of the trade and commerce involved, Plaintiffs

believe that the total number of Class members is at least 150, and are numerous

and geographically dispersed across the country. While the exact number and

identities of the Class members are unknown at this time, such information can be

ascertained through appropriate investigation and discovery, as well as by the

notice Class members will receive by virtue of this litigation so that they may self-

identify. The disposition of the claims of Class members in a single class action

will provide substantial benefits to all Parties and the Court. Members of the Class

may be notified of the pendency of this action by recognized, Court-approved

notice dissemination methods, which may include U.S. Mail, electronic mail,

Internet postings, and/or published notice.

36.     **Commonality and Predominance under Federal Rule of Civil**

**Procedure 23(a)(2) and 23(b)(3)**: This action involves common questions of law

and fact which predominate over any questions affecting individual Class

members, including, without limitation:

a.     Whether Ford engaged in the conduct alleged herein;

b.     Whether Ford had an obligation to reimburse dealers for the

markup based on the retail rates of the products at issue;

c.     Whether Ford failed to comply with this obligation regarding

reimbursement; and

d.     Whether Plaintiffs and the other Class members are entitled to

damages and other monetary relief and, if so, what amount.

37.     **Typicality under Federal Rule of Civil Procedure 23(a)(3)**:

Plaintiffs' claims are typical of the other Class members' claims because all have

been comparably injured through Ford's wrongful conduct as described above.

38.     **Adequacy of Representation under Federal Rule of Civil**

**Procedure 23(a)(3)**: Plaintiffs are adequate Class representatives because their

interests do not conflict with the interests of the other Class members they seek to

represent. Additionally, Plaintiffs have retained counsel with substantial

experience in handling complex class actions and multi-district litigation, as well

as automotive dealer litigation. Plaintiffs and their counsel are committed to

prosecuting this action vigorously on behalf of the Class and have the financial

resources to do so. The interests of the Class will be fairly and adequately

protected by Plaintiffs and their counsel.

39.     **Superiority of Class Action under Federal Rule of Civil Procedure**

**23(b)(3)**: A class action is superior to any other available means for the fair and

efficient adjudication of this controversy, and no unusual difficulties are likely to

be encountered in the management of this class action. The financial detriment

suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford for its wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS

### COUNT I:  VIOLATIONS OF THE FRANCHISED MOTOR VEHICLE DEALER ACT ("NYDA") (NY VEH & TRAF § 465 *et seq.*)

40.     Ford is a "franchisor" under the NYDA.

41.     Each Plaintiff is a "franchised motor vehicle dealer" under the NYDA.

42.     Pursuant to the NYDA, "Every franchisor shall properly fulfill any warranty agreement and/or franchisor's service contract, including but not limited to all warranty repairs, extended warranty repairs, factory compensated repairs, recalls, diagnostics, parts and other voluntary stop-sell repairs, and shall compensate each of its franchised motor vehicle dealers for all warranty, recall, diagnostic labor operations and parts where applicable in amounts which reflect

**reasonable compensation** for such work." N.Y. Veh. & Traf. Law § 465(1) (emphasis added).

43.     In addition, "[f]or diagnosis work, **parts reimbursement**, other than components, systems, fixtures, appliances, furnishings, accessories and features of a house coach that are designed, used and maintained primarily for nonvehicular residential purposes, and for labor reimbursement, **reasonable compensation shall not be less than the price and rate charged by the franchised motor vehicle dealer for like services to non-warranty and/or non-service contract customers**." *Id.* (emphasis added).

44.     Pursuant to the Automotive Dealers' Day in Court Act, Plaintiffs may seek damages from Ford in federal court for violations of the NYDA. 15 U.S.C. § 1222.

45.     Plaintiffs accordingly are entitled to damages equal to the amount they should have received pursuant to the NYDA, less the amount they actually received. Plaintiffs are also entitled to recover costs and attorneys' fees, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Classes, respectfully request that the Court enter judgment in their favor and against Ford Motor Company, as follows:

A.    Certification of the proposed Class, including appointment of Plaintiffs' Counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Ford from continuing the unlawful and wrongful conduct described in the Complaint;

C.    Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

D.    An order requiring Ford to pay both pre- and post-judgment interest on any amounts awarded;

E.    An award of costs and attorneys' fees; and

F.    Such other or further relief as may be appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: December 5, 2025         Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: /s/ *Steve W. Berman*
    Steve W. Berman
    Jerrod C. Patterson
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

Leonard Bellavia
BELLAVIA COHEN P.C.
200 Old Country Road, Suite 400
Mineola, NY  11501
Telephone: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com

E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
dal@millerlawpc.com

*Attorneys for Plaintiffs and the proposed putative Class*